IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BETHANY V. BOWEN, | ) | Case No. 4:07CV3221 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| HONORABLE JEFFRE | ) | |
| CHEUVRONT, in his official | ) | |
| capacity as Justice of the District | ) | |
| Court for the State of Nebraska, | ) | |
| | ) | |
| Defendant. | ) | |

*"You've got to be very careful if you don't know where you're going,
because you might not get there."* [1]

For many years, the Supreme Court has made it plain that a federal judge
should not use his or her discretionary power under the declaratory judgment statute
to interfere with a pending state criminal prosecution except in the most extraordinary
of circumstances. *Samuels v. Mackell*, 401 U.S. 66 (1971).  Because the plaintiff and
her counsel have failed to acknowledge *Samuels*, let alone deal with its implications,
they have also failed to show cause why Rule 11 has not been violated by the filing
of the plaintiff's complaint.  As a consequence, I will dismiss this case without
prejudice and caution the plaintiff's counsel to be more careful.

## I.  *Background*

The plaintiff has filed a very unusual lawsuit that seeks to interject this court
into the ongoing administration of a pending state criminal prosecution.  The plaintiff

---

[1] William D. Araiza, and 38 other law professors, *The Jurisprudence of Yogi
Berra*, 46 Emory L.J. 697, text at n.369 (1997).

alleges that she is a victim of sexual assault, that Pamir Safi has been charged with that assault in a Nebraska court, that she is a witness in the case, and that the Honorable Jeffre Cheuvront, a Nebraska district judge, wrongly issued an order in the Safi prosecution "forbidding all witnesses [from using] the words: 'rape', 'victim', 'assailant', 'sexual assault kit' and 'sexual assault nurse examiner'."  (Filing 1, Complaint ¶¶ 1, 8.)  Asserting that the criminal case has resulted in two mistrials, and a third trial is scheduled to take place in the next several months, the plaintiff requests "an expedited bench trial" and she seeks an order "declaring that the defendant herein has acted in violation of the federal constitution."  (Filing 1, Complaint, "Demands for Judgment" ¶ 1, at CM/ECF p. 8.)  Because she apparently recognizes that the law forbids such requests, Ms. Bowen does not seek damages or injunctive relief.  (*Id.*)

In response to the plaintiff's complaint, I entered an order requiring the plaintiff and her counsel to show cause why the complaint did not violate Rule 11.  (Filing 4.)  I also gave Judge Cheuvront leave not to answer or otherwise respond to the plaintiff's complaint until I ordered otherwise.  In particular, I ordered the plaintiff and her counsel to show cause why I should not conclude that (a) the complaint was filed for an improper purpose[2] and (b) the claims and legal contentions set forth in the complaint are not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.  *See* Federal Rule of Civil Procedure 11(a), (b) & (c)(1)(B); *Clark v. United Parcel Service, Inc.*, 460 F.3d 1004, 1008 (8th Cir. 2006) ("A district court may impose Rule 11 sanctions on its own initiative, but it must first enter an order describing the specific conduct that appears to violate Rule 11(b), and direct the attorney to show cause why he has not violated the rule.").  Among others, I expressed a concern that this action might improperly interfere with the pending state criminal prosecution.

---

[2]Because the record is insufficient, I decline to determine whether this case was brought for an improper purpose.

The plaintiff and her counsel have now responded. (Filings 9 & 10.) The plaintiff admits that her case is unprecedented. For example, she states (with hyperbolic flare) that "this case stands in the eye of a perfect legal storm in terms of offering this Court a unique opportunity to resolve an important, and thus far unredressed anywhere, legal controversy." (Filing 9, at CM/ECF p. 11.) She adds that this "is a case of first impression" seeking, if necessary, an "extension or modification of existing law" to "provide declaratory guidance to state courts in the novel matters raised herein." (Filing 9, at CM/ECF pp. 17-18.)

   To justify her unique complaint, the plaintiff provides the following history:

   In the underlying criminal action, the State charged Pamir Safi with felonious sexual assault of the instant Plaintiff. The Plaintiff reported that after consuming alcohol at a college Halloween party, Mr. Safi, a man she did not know and has no memory of ever meeting, drugged her, took her against her will to another location, and that she awoke from an unconscious state to find herself covered in vomit while being raped by Mr. Safi.

   The underlying criminal case has been scheduled for trial twice. The first two trials ended in mistrial rulings. A third trial is tentatively scheduled for late 2007 or early 2008.

   Prior to the first criminal trial, Mr. Safi's counsel filed a motion in limine to preclude witnesses from using the words "victim," "assailant," "attack," "sexual assault kit," and "rape" alleging that these words would be "unfairly inflammatory, prejudicial, or misleading and they invade the province of the jury." Lanc. Co. Neb. Dist. Ct. Case No. CR05-0087, Defense "Motion in Limine: Prejudicial Terms," filing #15, October 10, 2006. In response, Judge Cheuvront precluded specified testimonial language ("language order") in an order from the bench.

   Nebraska Assistant County Attorney Pat Condon formed the legal opinion that the State wanted to seek judicial review but had no authority to file an interlocutory appeal from a motion in limine, and

subsequently conveyed this fact to Plaintiff's counsel Wendy Murphy and Sue Ellen Wall.

Judge Cheuvront placed the instant Plaintiff under legal oath to testify truthfully and accurately during the first trial. The jury was unaware of the court's language order. Plaintiff stumbled in her testimony as she attempted to comply with the language order. Plaintiff and other witnesses reportedly had difficulty complying and on more than one occasion used the forbidden terminology. The first trial resulted in a mistrial because the jury could not agree on a unanimous verdict.

Prior to the second trial, on July 2, 2007, Judge Cheuvront ordered the Plaintiff to refrain from using the terms "rape," "assailant," and "victim." The court further ordered that the "rape kit" or "sexual assault kit" be referred to as the "sexual examination kit" and the SANE (Sexual Assault Nurse Examiner) Nurse be referred to as the "sexual examiner." A prosecution motion seeking to forbid use of the words "sex" and "intercourse" was denied.

Judge Cheuvront then ordered the witnesses, including the Plaintiff, to sign an order acknowledging the language order and the possible punishments they faced if they violated the language order ("acknowledgment order"), which included contempt. Believing the language order violated her constitutional rights, the Plaintiff refused to sign the acknowledgment order and sought a venue for a procedurally appropriate review to seek redress of her First Amendment and due process claims. Citing Nebraska law, the Plaintiff asked Judge Cheuvront to hold her in contempt, and stay any related sanction pending appeal as a means to obtain appropriate review of her claims regarding the language order. Judge Cheuvront declined to consider her request.

The Plaintiff then filed a Writ of Habeas Corpus with the Nebraska Supreme Court seeking review of her constitutional claims on July 10, 2007. Her Writ was dismissed without hearing or comment on July 11, 2007.

-4-

Plaintiff's original local counsel withdrew because of a conflict. Plaintiff obtained substitute local counsel, Attorney Wall, who filed a motion for reconsideration of the language order on July 11. On July 11, 2007, Judge Cheuvront conducted a hearing on the issue of whether the instant Plaintiff intended to comply with his language order during trial. She testified that she did not believe she could take an oath to tell the truth and then use words that did not accurately reflect her experience. At that hearing, the Plaintiff's constitutional claims were not reviewed according to the requisite standard and her motion for reconsideration was not addressed. The following day, prior to the completion of *voir dire* and jury selection, Judge Cheuvront declared a mistrial on grounds related to pretrial publicity and public criticism of his language order. The mistrial ruling was unrelated to the Plaintiff's anticipated noncompliance with the court's language order.

On or about August 23, 2007, the Plaintiff learned that the criminal case would proceed to a third trial at the end of 2007 or early 2008. She commenced this action on or about September 6, 2007 seeking an expedited hearing for declaratory relief prior to the beginning of the third criminal trial.

On September 10, 2007, Judge Kopf served an Order to Show Cause on Plaintiff's counsel citing Fed. R. Civ. P. 11(b)(1) and (2).

(Filing 9, at CM/ECF pp. 3-5.)

For present purposes, I take the plaintiff's statement of facts to be true. I also assume that Ms. Bowen and her counsel are subjectively well-motivated.

The same holds true for Judge Cheuvront. That is, I assume (and there is no claim to the contrary) that the judge is only trying do his level best. I also assume (and there is no claim to the contrary) that the judge has jurisdiction to do what he has done.

## *II. Analysis*

First, I examine the plaintiff's demand for a declaratory judgment and the federal law regarding declaratory judgments through the prism of Rule 11. Second, concluding that Rule 11 has been violated, I explain what sanctions are appropriate.

### A. *Declaratory Relief is Plainly Not Available and Rule 11 Has Been Violated*

As the plaintiff recognizes by failing to seek damages, Judge Cheuvront would have had absolute judicial immunity had she sought monetary relief even if the judge violated her rights as alleged. *See*, *e.g.*, *Sveeggen v. United States*, 988 F.2d 829, 830-31 (8th Cir. 1993) (affirming dismissal of suit and award of Rule 11 sanctions because judges have absolute judicial immunity when they act within their jurisdiction). In the same vein, and as the plaintiff recognizes by failing to seek injunctive relief,[3] this court cannot enjoin Judge Cheuvront in this action even if he violated the plaintiff's federal rights as alleged. This is because Congress, in the statute upon which the plaintiff relies, has precluded injunctive relief in the absence of an earlier declaratory judgment or a showing that declaratory relief was unavailable. 42 U.S.C. § 1983 (providing that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable"). *See, e.g., Kircher v. City of Ypsilanti,* 458 F. Supp. 2d 439, 447-448 (E.D. Mich. 2006) (applying 42 U.S.C. § 1983; holding that the plaintiff was not entitled to injunctive relief ordering that the defendant-judges "not violate the U.S. Constitution" because the plaintiff had not alleged that the judges violated a prior declaratory decree or that declaratory relief was unavailable;

---

[3]In her response, the plaintiff confirms that she is not seeking injunctive relief. (Filing 9, at CM/ECF p. 7.) Indeed, the plaintiff suggests that she intentionally sought "declaratory rather than injunctive relief . . . ." (*Id.*)

awarding sanctions under Rule 11 for maintaining claim for equitable relief against judges).

Thus, the only remaining federal remedy open to the plaintiff is the very narrow window of declaratory relief.   Declaratory relief requires, and in every conception of any law that I could imagine would always require, a clear showing that it is necessary and appropriate for a federal judge to interfere with the pending state criminal prosecution.  Giving the plaintiff the benefit of every doubt, there is no possibility that the plaintiff can make the requisite showing that it is necessary and appropriate to interfere with the pending state criminal prosecution.

The foregoing being true, it is obvious that Rule 11 has been violated.  I next explain in more detail why that is true.

## 1.    *Declaratory Relief in the Federal Courts Is Discretionary With the Judge*

Because federal courts have never had the power to render advisory opinions, for much of our history it was believed that a federal judge had the power to declare the rights and obligations of the parties "only when a complainant is entitled to a coercive remedy, such as a judgment for damages or an injunction."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2751, at 455 (1998 & Supp. 2007).  In other words, if one was not entitled to damages or an injunction, one was not entitled to a federal judicial declaration that one's opponent had done something wrong.

In 1934, with the adoption of the Declaratory Judgment Act, the law changed. *Id.* § 2752.  Now, in certain circumstances, federal judges have authority to issue declaratory judgments even when, as is the case here, no damages or injunctive relief is sought.  *Id.* § 2751.  The federal law on declaratory judgments is presently found

in 28 U.S.C. § 2201[4] and 28 U.S.C. § 2202.[5]  In addition, Federal Rule of Civil Procedure 57 makes all actions for declaratory relief subject to the Federal Rules of Civil Procedure.  Thus, Rule 11 is explicitly applicable to suits for declaratory judgment.

Unlike other cases, a federal judge has discretion to deny relief in a declaratory judgment action even when he or she might otherwise be persuaded that the plaintiff is entitled to relief.  As Justice O'Connor has made clear when speaking for the Supreme Court:

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; *it created an opportunity, rather than a duty,* to grant a new form of relief to qualifying litigants. *Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.* In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

[4]As pertinent to this case, the statute provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

[5] That statute states:  "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."  This, of course, grants me the "federal hook" to force Judge Cheuvront to do what I say, in mid-trial or otherwise, should he stray (intentionally or accidentally) from any declaration of Ms. Bowen's rights that I might make.

*Wilton v. Seven Falls*, 515 U.S. 277, 288 (1995) (footnote omitted) (emphasis added).

Like Justice O'Connor, leading scholars make it plain that I have no duty to grant the plaintiff relief even if she might otherwise be entitled to it.   They state:

> Thus, it is well settled by a multitude of cases that the granting of a declaratory judgment rests in the sound discretion of the trial court exercised in the public interest.  It is always the duty of the court to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired relief.

*Federal Practice and Procedure* § 2759, at 540-542 (footnotes omitted).

Without intending to be unkind, the plaintiff and her counsel seem totally unaware that I have no duty to act for her and that, in any event, I am free to act only after considering the "public interest" and the "proper balance between the needs of the plaintiff and the consequences of giving the desired relief."  Because the plaintiff and her counsel have failed to do so in any meaningful fashion, I turn to those considerations next.

## 2.     *Except in Extraordinary Circumstances, Federal Judges Are Not Supposed to Stick Their Noses Into Pending State Criminal Prosecutions*

In *Younger v. Harris*, 401 U.S. 37, 56 (1971), the Supreme Court held that federal courts are not to enjoin pending state court criminal proceedings except in the "most unusual circumstances."  *Federal Practice and Procedure* § 2764, at 626. Referring to the "longstanding public policy against federal court interference" with

state criminal matters,[6] the Court grounded the *Younger* doctrine on concerns of comity, federalism, and equity.  *Younger*, 401 U.S. at 43-44.

Our Court of Appeals has nicely summarized the *Younger* doctrine this way:

> In *Younger*, the Supreme Court held that federal courts may not enjoin pending state court criminal proceedings except in very unusual situations. . . . There are essentially three issues that must be addressed in determining whether to invoke the *Younger* abstention doctrine: (1) whether the action complained of constitutes an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise constitutional challenges.  If all three questions are answered affirmatively, a federal court should abstain unless it detects "bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate."

*Night Clubs, Inc. v. City of Fort Smith, Ark.*, 163 F.3d 475, 479 (8th Cir. 1998) (citations omitted).

On the same day the Supreme Court decided *Younger*, the Court also applied the *Younger* principles to declaratory judgment actions involving pending state criminal prosecutions.  *Samuels v. Mackell*, 401 U.S. 66, 72-73 (1971).  There the Court stated:

> We therefore hold that, in cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to

---

[6]*See*, *e.g.*, *Fenner v. Boykin*, 271 U.S. 240 (1926) (stating that cases like *Ex Parte Young*, 209 U.S. 123 (1908) "have established the doctrine that, when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions. But this may not be done, except under extraordinary circumstances, where the danger of irreparable loss is both great and immediate").

the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and that where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well.

*Id.* at 73.

Leading treatise writers have stated that the "holding" in *Samuels* "has been applied in numerous cases since and declaratory relief denied in order to avoid interfering with state criminal proceedings." *Federal Practice and Procedure* § 2764, at 626 (footnote omitted). Unfortunately, the plaintiff and her counsel have failed to cite *Samuels* (or *Younger*), let alone deal with the implications. (*See* Filing 9.)

Of course, I am aware that Ms. Bowen is not the target of the state criminal action, but, rather, she is a witness who may testify in that criminal proceeding. This difference—witness versus defendant—distinguishes her request for equitable relief from those in *Younger* and *Samuels*. That acknowledged, the principles are the same. Ms. Bowen wants me to use my federal equitable power to shape the contours of the ongoing prosecution of a state criminal case. This is precisely the interference that the Supreme Court had in mind when it adopted the principles set forth in *Younger* and *Samuels*. Indeed, the Supreme Court has held that these principles are applicable in situations where a witness is threatened with, or subject to, a contempt order by a state court. *Juidice v. Vail*, 430 U.S. 327, 335-336 (1977) (applying *Younger* and holding, with respect to debtors subpoenaed to appear in court to give testimony about their finances, that "[t]hese principles apply to a case in which the State's contempt process is involved").

**3.    *Applying the Supreme Court's Precedents, Declaratory Relief is Obviously Unwarranted and Rule 11 Has Been Violated***

It is obvious that I cannot provide the plaintiff with the relief she seeks without substantially interfering with the upcoming criminal trial. That would violate

-11-

the Supreme Court's precedents.  There is no nonfrivolous argument that would justify my disregard of those precedents.

Make no mistake, through the vehicle of a declaratory judgment, the plaintiff wants me to jump right into the middle of the pending state criminal case and the upcoming third trial.  For example, in her complaint, she asks that I give Judge Cheuvront "[g]uidance" regarding the "practice of state court judges issuing orders restricting the language of victims and witnesses . . . ."  (Filing 1, at CM/ECF pp. 1-2.)  The same request for "guidance" is made by a state prosecutor from Oregon who filed an affidavit (which, incidentally, was not properly notarized) in support of the plaintiff.  (Filing 10, at CM/ECF p. 3 ¶ 5.)  All of these statements are made in the context of Judge Cheuvront's scheduling the third trial.  Using their euphemism, the plaintiff and her supporter from Oregon ask me to "guide" Judge Cheuvront as he tries the Safi case for a third time.

This must be so because if the plaintiff is only basing her complaint on what happened to her in the past, and not also on what may happen to her in the future, she has plainly suffered no "injury" and she lacks Article III "standing" to bring this action.  In the first criminal trial, she was able to testify, Judge Cheuvront did not hold her in contempt, and the jury deliberated and reached an impasse.  In the second criminal trial, Ms. Bowen was not required to testify because a mistrial was declared due to pretrial publicity before the jury was selected.  Even though she asked to be held in contempt, Judge Cheuvront declined to do so.  As a result, *if* the plaintiff looks only to the past, her complaint fails for lack of Article III standing.  *See*, *e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561(1992) (holding, among other things, that the "irreducible constitutional minimum of standing" requires that plaintiff "have suffered an 'injury in fact'" which is "an invasion of a legally protected interest" that is "concrete and particularized" and "'actual or imminent,'" rather than "'conjectural' or 'hypothetical'") (citations omitted).

-12-

If it were otherwise, then any disgruntled witness who appears before a state judge has the keys to the federal courthouse to use whenever she dislikes the tenor of a state judge's ruling limiting her testimony. That, obviously, is not the law and I cannot imagine it ever becoming the law. It is only the threat of contempt in the future that gives the plaintiff arguable Article III standing to bring this suit today.[7]

To be clear, then, the plaintiff wants something more than a declaration about what happened in the past. Specifically, she wants me to tell Judge Cheuvront how to rule in the future on issues like the plaintiff's use of the word "rape"[8] when (and if) she appears as a witness during the trial of Mr. Safi. With that prospect grimly[9]

_____

[7]There is a very strong argument that even a threat of contempt does not confer "standing" on the plaintiff because the threat is conjectural. After all, Judge Cheuvront has already declined one invitation to hold Ms. Bowen in contempt, the Nebraska prosecutor may convince Judge Cheuvront to change his mind in whole or in part, Ms. Bowen may decide to testify despite the judge's limitation and her testimony might go better than she expects, or Ms. Bowen may simply refuse to testify or invoke her privilege against self-incrimination. That said, I do not base my decision on the plaintiff's lack of standing. Rather, I discuss standing to point out that the plaintiff can go forward *only* if the logic of her complaint would compel me to tell Judge Cheuvront what he must do in Mr. Safi's next trial if I were to agree that his order somehow violated Ms. Bowen's federal constitutional rights. Bluntly put, Ms. Bowen cannot get around the limitations on federal declaratory relief by claiming that she is only seeking a judgment on what happened in the past.

[8]For the life of me, I do not understand why a judge would tell an alleged rape victim that she cannot say she was "raped" when she testifies in a trial about rape. Juries are not stupid. They are very wise. In my opinion, no properly instructed jury is going to be improperly swayed because a woman uses the word "rape" rather than some tortured equivalent for the word. But please read the next footnote.

[9]I say "grimly" for a variety of reasons, not the least of which is that I have no experience (nada, zip, zilch, zero) presiding over rape cases. While I have been on the federal bench over 20 years and have presided over tons of criminal cases and hundreds of jury trials, I have never sat as a judge on an ordinary rape case. If the

in mind, I will next determine whether the plaintiff has any plausible argument in her favor.

### (a)    The Plaintiff Cannot Make the Necessary Showing For Federal Intervention in the State Criminal Proceeding

Ms. Bowen and her counsel have utterly failed to make a plausible showing that the circumstances necessary for a declaratory judgment are present in this case. *See*, *e.g.*, *Norwood v. Dickey*, 409 F.3d 901, 903-04 (8ᵗʰ Cir. 2005) (affirming dismissal and holding that attorney's § 1983 action against justices of Arkansas Supreme Court challenging constitutionality of confidentiality provision of judicial rules was barred by *Younger* doctrine; proceedings before Commission were ongoing when attorney brought claim, proceedings implicated important state interest of quality of its judiciary, and attorney could have presented his claim to state tribunals); *Mounkes v. Conklin*, 922 F. Supp. 1501, 1510-1513 (D. Kan. 1996) (dismissing action and holding that in suit against judges seeking declaratory and injunctive relief regarding enforcement of bail bond rules, plaintiffs did not demonstrate extraordinary circumstances for federal equitable intervention as required under *Younger*) (citations omitted).

First, there is no question that the action complained of takes place within the context of an ongoing state criminal prosecution.  Second, the proceedings clearly implicate important state interests.  Third, there is an adequate opportunity in the state proceeding to raise Ms. Bowen's constitutional challenges.[10]  Fourth, there is not the

---

plaintiff's lawyers are really serious about *me* "guiding" Judge Cheuvront, they might want to think again.  Trust me, federal judges are no smarter (or dumber) than their state counterparts.  We may, however, seem more arrogant.  For myself, I plead guilty to that charge.

[10]Judge Cheuvront has *already* provided Ms. Bowen with a modicum of due process by holding a hearing in which she and her lawyers were given the opportunity

-14-

slightest reason to believe that Judge Cheuvront is acting in bad faith or to harass Ms. Bowen. Fifth, this case is not "extraordinary." Witnesses, who also claim to be victims, are subjected to all sorts of limitations on their testimony in all sorts of criminal cases in all sorts of courtrooms for all sorts of reasons. Ms. Bowen and her case are not special.

In summary, invoking federal jurisdiction seeking a declaratory judgment against a state court judge who is presiding over a state criminal case is serious business requiring far more legal support than Ms. Bowen and her counsel have provided. With that in mind, I turn next to Rule 11.

### *(b)*    *The Plaintiff's Complaint Violates Rule 11*

Rule 11 provides that when a party or a lawyer files a complaint, that person certifies that the "claims . . . and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . ." Fed. R. Civ. P. 11(b)(2). Rule 11(b)(2) has been violated in this case because the claim for

---

to appear and voice their views. Furthermore, if Ms. Bowen is held in contempt, she will be afforded meaningful due process under Nebraska law. *See, e.g., In Re Rice,* 60 N.W.2d 668, 671 (Neb. 1953) (in a contempt proceeding, Chief Justice Simmons made clear that under Nebraska law a "finding and punishment of a witness for contempt for properly protecting himself from an illegal inquisition will not be upheld"). There is nothing before me that even vaguely suggests that the courts of the State of Nebraska will refuse to safeguard Ms. Bowen's constitutional rights at the appropriate time. As an aside, Ms. Bowen's hapless and unsuccessful attempts to be held in contempt or to bring suit in the Nebraska Supreme Court before her case was ripe prove only that the courts of Nebraska take their work seriously. When all is said and done, I will "'not engage any presumption "that the state courts will not safeguard federal constitutional rights."'" *Norwood,* 408 F.3d at 904 (quoting *Neal v. Wilson,* 112 F.3d 351, 357 (8th Cir. 1997), in turn quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431 (1982)).

declaratory relief set forth in the complaint is plainly lacking in support under any reading of federal law. *See*, *e.g.*, *Kircher*, 458 F. Supp. 2d at 447-448, 453-454 (awarding sanctions under Rule 11 in suit brought under section 1983 against judges seeking only federal equitable relief because it was apparent that such relief was unavailable). Indeed, the plaintiff and her counsel have ignored the precedents regarding the limitations on declaratory judgment actions in federal court. Because they apparently do not understand the limitations of federal law as it presently exists, the plaintiff and her counsel have also failed to advance a nonfrivolous argument for the extension, modification, or reversal of that law or the establishment of new law.

### B.   The Appropriate Sanctions

Having concluded that Rule 11 has been violated, I must determine what sanctions are appropriate. I am required to pick the sanctions that "are sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2). With that in mind, the appropriate sanctions are two-fold. They are: (1) dismissal without prejudice of the plaintiff's complaint and (2) a caution, herewith given to the plaintiff's passionate counsel, to more carefully consider the limits of federal declaratory relief before filing similar suits in the future.[11] This is sufficient, but no more harsh than necessary, to deter the plaintiff, her counsel, and others from future conduct like that presented here.

### III.   Conclusion

I am aware that my handling of this unprecedented complaint under Rule 11 is out of the ordinary. I am also aware that Rule 11 is not intended to serve as a

---

[11]The names of counsel who signed the complaint and the response to the order to show cause are Jennifer A. Hoult, Sue Ellen Wall, and Wendy J. Murphy. (Filing 1, at CM/ECF pp. 8 & 9; Filing 9, at CM/ECF pp. 26 & 27.)

substitute for the adversarial process in general or motion practice in particular.  The foregoing said, I am extremely and especially reluctant to force Judge Cheuvront to respond to the plaintiff's complaint seeking declaratory relief, a complaint that in my opinion obviously violates Rule 11, while he is also overseeing a difficult state criminal case that has generated frenzied media attention.  I fear that any response the judge might be required to make in this case could cause him to be disqualified from presiding over the state criminal matter.  Furthermore, the mere pendency of this case casts a dark shadow over Judge Cheuvront's continued supervision of the criminal case.  He must not be required to "look over his shoulder" while he is preparing to try the state criminal case for yet a third time.

For all of these reasons, the utilization of Rule 11 to get at this matter rapidly is justified.  Accordingly,

IT IS ORDERED that this case is dismissed without prejudice for violation of Rule 11.  A separate judgment will be issued contemporaneously with the entry of this decision.

September 25, 2007.                            BY THE COURT:

                                               s/ *Richard G. Kopf*
                                               United States District Judge

-17-